**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

CAROLYN PARRISH, etc.

        Plaintiff,

vs.                                       Case No. 3:03-cv-817-J-32MCR

FREIGHTLINER, LLC,

        Defendant.

### **ORDER**

This case is before the Court on Defendant's Motion to Strike Expert, or in the Alternative, Motion to Stay Discovery and Award Sanctions (Doc. 61), and Defendant's Motion for Summary Final Judgment (Doc. 63). Plaintiff filed oppositions to the motion to strike (Doc. 70), and motion for summary judgment (Doc. 69). On December 16, 2005, the Court heard oral argument. (Doc. 82).

**I.    BACKGROUND**

This is a products liability case for wrongful death pursuant to § 768.16, Florida Statutes. The accident giving rise to the suit occurred on October 14, 2001, when the decedent, Mark Parrish, was operating a Freightliner FLD tractor-trailer ("Freightliner truck"), driving south on Interstate 75 near Ocala, Florida, when he was involved in a traffic accident with another motorist. During the accident, the Freightliner truck turned on its passenger side and caught fire. Mr. Parrish was unable to extricate himself from the Freightliner truck and died.

On September 23, 2003, decedent's wife, Carolyn Parrish, individually and as personal representative of the estate of her husband, filed suit against defendant Freightliner LLC ("defendant") on theories of negligence and strict liability, seeking compensatory and punitive damages. (Doc. 1). In the pending motions, defendant seeks dispositive relief due to plaintiff's inability to prove any theory of liability and repeated failure to prosecute this case. Before delving into the merits of the motions, a detailed look at the history of this case is necessary.

On December 29, 2003, the Court issued a Case Management and Scheduling Order (Doc. 13) adopting the deadlines set forth in the parties' joint Case Management Report (Doc. 10). The Scheduling Order set August 2, 2004 as the deadline for plaintiff to file her expert reports, and November 1, 2004 as the discovery deadline. (Doc. 13).

The case did not progress as required in the Scheduling Order. On July 13, 2004, plaintiff's current lead counsel appeared in the case and replaced plaintiff's former lead counsel, who withdrew shortly thereafter. (Doc. 31). On August 2, 2004, the day plaintiff's expert reports were due, plaintiff moved for an extension of certain case management deadlines citing problems with the change in counsel and obtaining discovery responses from defendant.[1] (Doc. 30). In the motion, plaintiff

---

[1] At the time of filing the motion, defendant had an outstanding motion to compel against plaintiff (Doc. 19), to which plaintiff inexplicably failed to timely respond. Plaintiff was ultimately ordered to do so by the Magistrate Judge. (Doc. 26).

sought an extension of plaintiff's expert report deadline for approximately forty-five days and extensions for disclosure of defendant's experts, rebuttal experts, discovery, dispositive and Daubert motions. (Id.). Plaintiff did not seek to extend the pre-trial deadlines or the trial date of April 11, 2005. Over defendant's objection, the Court granted the requested extensions and ordered extensions of other remaining deadlines. (Doc. 36). Plaintiff's new expert report deadline was September 15, 2004, and the new discovery deadline was December 1, 2004. (Id.).

Then, on September 14, 2004, the day before plaintiff's extended expert report deadline, plaintiff filed a request for an additional unspecified amount of time to allow her experts to complete their reports. (Doc. 38). As grounds, plaintiff stated she had been "unable to provide her experts the information they need to finalize their opinions in this case in order to prepare their final expert reports." (Id. at ¶ 4). Plaintiff also stated that while she had retained experts who had reviewed significant information relating to the accident, the experts needed to inspect an exemplar vehicle to complete their analyses. (Id.). Defendant opposed any further extension of case deadlines (Doc. 39), and filed a motion to strike plaintiff's claim for punitive damages (Doc. 40) as a sanction for failing to comply with the Court's scheduling orders and for failing to disclose an expert who could support the punitive damages claim.

On October 25, 2004, the Court heard oral argument on those motions. At that hearing, plaintiff's counsel conceded that very little work had been done to prosecute

the case since it had been filed in September 2003. During the hearing, the following exchange occurred:

> THE COURT: ...I don't normally set these kind of motions for hearing, but this one caught my attention, because I couldn't quite figure out what was going on in this case ... Your [plaintiff's] adversaries have essentially accused your side of the case ... [b]asically saying that ya'll haven't done a whole lot in the three years since this accident happened, and then ... over-a-year since the suit's been filed. And so I ought not to be giving you any more extensions, because the deadlines have already been extended once. And now it looks like we're kind of starting all over again. So tell me why that's not the right way to look at it.
>
> MR. BROWNING (plaintiff's attorney): Your Honor, I'm afraid that's not completely a wrong way to look at it. At this point in the case, the experts that the plaintiff's counsel had originally hired to review the case, which we believe to be a meritorious underlying suit, are nowhere ready to present opinions. They are not in a position to advance the plaintiff's theory of the case.

(Doc. 60, pp. 2-3). (Emphasis added).

While plaintiff's counsel conceded that plaintiff's experts were not in any position to offer opinions, he identified the experts who had been hired and stated the general nature of their expertise and anticipated testimony. (Doc. 60, pp. 15, 32-34). The experts were: (a) Ron Kirk (Accident Reconstruction), (b) Jim Mundo (Mechanical Engineer and Design Expert), (c) Chip Bush (Fire Expert), and (d) Paul Mason (Economist). Plaintiff hired the three liability experts (Kirk, Mundo and Bush) to opine on the theory of the case that defendant was negligent and strictly liable because of the placement of the Freightliner truck's side-saddle fuel tanks, which were allegedly prone to start fires in an accident. Plaintiff essentially asked the Court for permission

-4-

to start the case over, with these experts, and for a substantial continuance of all case deadlines.

After laboring over the appropriate sanction to enter against plaintiff due to her dilatoriness and failure to seek timely extensions of case deadlines, the Court ruled as follows: instead of entering the harsher sanction of refusing to extend the case deadlines due to "[p]laintiff's counsel's near total failure to prosecute and failure to offer any real justification for their dilatoriness," the Court instead struck plaintiff's claim for punitive damages. (Doc. 52). Had the Court denied the motion to modify the then current case management deadlines, that would have de facto ended the case as plaintiff would have been unable to proceed. Thus, citing the Court's discretion under Rule 37, Federal Rules of Civil Procedure, and the Court's inherent authority to manage its caseload, the undersigned entered a lesser sanction. (Id.). In addition, the Court vacated the then current scheduling order and set new deadlines, including August 1, 2005 as plaintiff's expert report deadline. (Id.).

On August 31 and September 1, 2005, respectively, defendant filed a new motion to strike and motion for summary judgment. (Docs. 61 & 63). In the motions, defendant states that on August 1, 2005, the day expert disclosures were due under the Court's now twice extended deadlines, plaintiff disclosed three experts: (a) Paul Mason (Economist), (b) Walter A. "Butch" Kennedy (Accident Reconstruction), and (c) Gerald Rosenbluth (Mechanical Engineering and Design). (Docs. 61 & 63).

-5-

Neither of the two listed liability experts (Rosenbluth and Kennedy) were the same as those disclosed by plaintiff at the October 25, 2004 hearing.

Through Gerald Rosenbluth's expert report, plaintiff entirely changed her theory of the case. Instead of disclosing a liability expert on the issue of location and alternative design of the side-saddle fuel tanks, plaintiff changed course and proffered her "new" theory based on defendant's alleged failure to provide an emergency escape hatch in the cab of the Freightliner truck. This was the very first mention of this theory to defendant even though the accident had occurred almost four years prior to this disclosure; moreover, the disclosure was not made until almost two years after plaintiff filed her complaint.

Interestingly, Rosenbluth notes in the first sentence of his expert report that he "preliminarily inspected" a 1999 model Freightliner FLD-120 tractor trailer on July 28, 2005. (Doc. 61, Ex. "D") (emphasis added). This was a mere three days before the already twice extended August 1, 2005 expert disclosure deadline.[2] In his conclusions, Mr. Rosenbluth opines, *inter alia*, that the subject trailer "should have been equipped with emergency exit doors and/or a quick release window alternative design." (Id.). By her own admission, plaintiff has now abandoned the theory of liability that she represented she wanted to pursue at the October 25, 2004 hearing.

---

[2] Plaintiff's counsel acknowledged during the December 16, 2005 hearing that Rosenbluth somewhat hurriedly performed his inspection and prepared his expert report so that the disclosure would be "timely." (Doc. 82, pp. 25-26).

-6-

Defendant seeks (1) summary judgment on plaintiff's pending claims, pled under a fuel tank placement theory, which plaintiff has now abandoned, and (2) an order striking expert Gerald Rosenbluth's report and testimony. Awarding summary judgment to defendant on the fuel tank placement theory and striking Mr. Rosenbluth would de facto be case dispositive, as plaintiff would have no evidence to support any defective design theory.

## II.   DISCUSSION

### A.   Summary Judgment on Fuel Tank Placement Theory

Federal Rule of Civil Procedure 56(c) provides that a district court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005).

Defendant contends that because plaintiff specifically pled her negligence and strict liability theories based on fuel tank placement and adduced no evidence supporting that theory during discovery, and is now abandoning it, defendant is

entitled to judgment as a matter of law.  Plaintiff responds that even though she specifically pled allegations in the Complaint regarding fuel tank placement, the Federal Rules of Civil Procedure only require notice pleading.  Therefore, because plaintiff pled general products liability and negligence claims, she is entitled to change her theory of the case and defendant is not entitled to a summary judgment on this issue.

The Court finds plaintiff's argument unpersuasive.  Not only does plaintiff's Complaint set forth the fuel tank placement theory of liability in great detail  (Doc. 1), plaintiff's October 5, 2004 supplemental interrogatory responses likewise proffer that theory as the sole basis of liability.  (Doc. 61, Ex. "A," and Doc. 63, Ex. "A"). Specifically, interrogatory number 3 asks: "[d]escribe each act or omission on the part of any party or non-party to this lawsuit that you contend constituted negligence and that was a contributing legal cause of the incident in question."  In the response, plaintiff listed eight separate reasons, all of which related to defendant's placement of the fuel tanks and its negligence in their design and failure to warn end users of the tanks' dangerous propensities. (Id.).  Nowhere did plaintiff mention negligence with respect to any failure to include an escape hatch in the cab of the Freightliner truck. In fact, the entire basis of plaintiff's presentation at the October 25, 2004 hearing, which convinced the Court to let plaintiff essentially start over, was based upon prosecution of the fuel tank placement theory.  There was no mention whatsoever of

the "new" escape hatch theory. Indeed, at no point prior to the twice extended August 1, 2005 expert disclosure deadline did plaintiff's counsel inform defendant or the Court of its "new" theory of liability, provide supplemental discovery responses divulging it or seek leave to amend the Complaint to plead it. Plaintiff's decision to abandon her previous theory, adopt a totally new theory and fail to inform either defendant or this Court of this decision until the day plaintiff's expert reports were due, is especially egregious given the history of plaintiff's failure to prosecute this case.

In her responses to defendant's motions and during the December 16, 2005 hearing, plaintiff admitted she was abandoning the fuel tank placement theory. At the very least, defendant is entitled to summary judgment on that theory. Whether defendant is entitled to full case dispositive relief depends upon whether the Court also strikes plaintiff's expert, Gerald Rosenbluth, who was disclosed on August 1, 2005, to testify concerning plaintiff's new escape hatch theory.

### B. Motion to Strike Gerald Rosenbluth and Summary Judgment on Remaining Claims

In the motion to strike Gerald Rosenbluth, defendant contends that plaintiff violated Rule 26(e), Federal Rules of Civil Procedure, when she disclosed Rosenbluth as a mechanical engineering and design expert concerning the "new" escape hatch theory because, *inter alia*, she never supplemented the October 5, 2004 interrogatory responses setting forth fuel tank placement as her sole liability theory. Plaintiff contends that she has not violated any Court Order or procedural rule because she

timely disclosed the new theory in Rosenbluth's report, and that because the "new" theory has been prosecuted against defendant in other lawsuits, defendant is aware of it and is not prejudiced if plaintiff pursues it here.

Rule 26(e)(2) provides:

> A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances ... (2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

Parties that run afoul of Rule 26(e) are subject to sanctions under Rule 37, Federal Rules of Civil Procedure. Rule 37(c)(1) provides, in pertinent part that, "[a] party [who] without substantial justification fails to ... amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed.R.Civ.P. 37(c)(1).

Thus, under Rules 26 and 37, the Court has discretion to sanction a party who fails to follow the Rules of Civil Procedure and the Court's orders and deadlines. See Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1544 (11th Cir.), cert. denied, 510 U.S. 863 (1993); Cooper v. Southern Co., 390 F.3d 695, 728 (11th Cir. 2004). To avoid sanctions, the party who is alleged to have failed to comply with Rule 26 bears

the burden to show that its actions were substantially justified or harmless. Stallworth v. E-Z Serve Convenience Stores, 199 F.R.D. 366, 368 (M.D. Ala. 2001).

In addition to Rule 37(c)(1) allowing for the imposition of sanctions, the United States Supreme Court has recognized a court's inherent power to impose sanctions, including dismissal, in response to abusive litigation practices. Link v. Wabash Railroad Co., 370 U.S. 626, 632-33 (1962); see also Malautea, 987 F.2d at 1545 (any court has the inherent power to impose reasonable sanctions upon litigants). Incident to this power, a judge may impose formal sanctions upon dilatory litigants. Mingo v. Sugar Cane Growers Co-op of Florida, 864 F.2d 101, 102 (11th Cir. 1989).

Plaintiff's actions throughout this case are contrary to both the letter and the spirit of the Federal Rules.[3] In addition to plaintiff's failure to timely notify defendant of the wholesale change in liability theory, plaintiff failed to prosecute this case despite their assurances over a year ago during the October 25, 2004 hearing. At that hearing in 2004, the Court seriously contemplated denying plaintiff's second motion to extend case deadlines, but did not do so because such a ruling would have been

---

[3] This is not limited to the Rule 26(e) violation. Rule 1 sets forth the scope and purpose of the Federal Rules of Civil Procedure, and states, in pertinent part: "[t]hese rules ... shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." While litigants and lawyers often require legitimate delay in discovery and trial due to various factors, the Court finds the present situation to be far different from the norm. Here, plaintiff wholly failed to prosecute the case for two plus years, then presented an entirely new theory of liability at the eleventh hour of the twice extended expert deadline. Not only does this run afoul of Rules 26 and 37, it also violates Rule 1.

-11-

case dispositive, and, at the time, lesser sanctions sufficed.  See Mingo, 864 F.2d at 102.  Instead, the Court, over defendant's strenuous objection, determined to provide plaintiff one last opportunity to meet her case obligations and to have the case decided on the merits.  Plaintiff's counsel even went so far during the October 25, 2004 hearing to disclose the names of plaintiff's experts and their areas of expertise.  (Doc. 60, pp. 15, 32-34).  All of that proffered expert testimony related to plaintiff's original fuel tank placement theory, not the newly crafted escape hatch theory.  (Id.).

Now the parties are here again, more than a year after plaintiff's counsel pled for leniency, and plaintiff has done little to prosecute the case.[4]  Unfortunately, the only step plaintiff has taken since October 2004 is to scrap her entire theory of liability and craft a new theory.  Meanwhile, plaintiff neither sought leave to amend the Complaint, nor supplemented the October 5, 2004 interrogatory responses that clearly articulate fuel tank placement as the only theory of the case.

Plaintiff's counsel's justification for failing to amend plaintiff's discovery responses, or otherwise alert defendant to the changed theory until the day plaintiff's expert disclosures were due (August 1, 2005), is that he did not learn until June 2005 that a jury in another case in California rendered a verdict in March 2005 against defendant under an allegedly similar escape hatch theory.  Even if that is the case,

---

[4] Defendant stated during the December 16, 2005 oral argument that since the October 25, 2004 hearing, plaintiff has failed to take any depositions or otherwise prosecute the case.  (Doc. 82, pp. 5-6).

-12-

it does not explain counsel's failure to timely notify either defendant or the Court that plaintiff had abandoned her original theory and jettisoned all of the experts upon which she had represented in October 2004 she was relying. Moreover, by her own admission, plaintiff became aware of the new theory in June 2005 and did not say a word to defendant or the Court until her expert report was due two months later, on August 1, 2005. Given the history of this case, that was simply unacceptable. Indeed, the Court would not have further continued the case after the October 2004 hearing if plaintiff's counsel had stated at that time that plaintiff needed additional time to go out and find a totally new theory of liability. Plaintiff failed to comply with the letter and spirit of Rule 26(e)(2), and the Court relies on Rule 37(c)(1) and its inherent power to manage its docket in determining an appropriate sanction. See Malautea, 987 F.2d at 1545.

The critical issue under Rule 37(c)(1) is whether plaintiff's failure to supplement her October 5, 2004 interrogatory responses and plaintiff's drastic change in course on August 1, 2005, was substantially justified or somehow harmless to defendant. See Fed.R.Civ.P. 37(c)(1). Defendant contends that plaintiff's late change in liability theory is not harmless because of the vast resources that it has spent in defending the fuel tank placement liability theory. Defendant states that even though plaintiff essentially failed to prosecute the case for over two years under the original fuel tank placement theory, defendant nevertheless performed significant work to mount a

-13-

defense to that theory, including producing over ten thousand documents to plaintiff, performing investigations and hiring expert witnesses who spent considerable time analyzing issues specifically related to plaintiff's now abandoned theory. (Doc. 63). Plaintiff's wholesale switch has rendered defendant's work on the original liability theory worthless. (Id.).

Quite remarkably, plaintiff's counsel contends that even if plaintiff has run afoul of any procedural rules or court orders, defendant's assertion that it has suffered any prejudice is "almost laughable." (Doc. 70, p. 4). One of plaintiff's counsel's reasons advanced to support this assertion is that defendant has been sued on this new theory in "at least two other cases." (Id. at p. 6). Plaintiff's counsel is apparently of the belief that because defendant has been sued on a similar escape hatch theory in other jurisdictions, it should be well aware that the theory exists and able to mount a proper defense in this case, even on the shortest notice.

That is not how civil litigation works. Discovery is not a game of "blind man's bluff," Dollar v. Long Mfg. N.C., Inc., 561 F.2d 613, 616 (5th Cir. 1977) (citation omitted), or "hide the ball," Hosea v. Langley, 2006 WL 314454, *5 (S.D. Ala.) (unpublished). Simply because a party has been sued under a theory in another lawsuit in another jurisdiction does not mean that party must be prepared in all other cases to defend that theory on a moment's notice.

Moreover, after failing to prosecute this case and receiving not one, but two,

-14-

extensions of case deadlines, and surprising defendant and the Court with its completely new theory on August 1, 2005, plaintiff's counsel remains unrepentant, arguing that "[i]f there will be a delay in this litigation, it will not be at Plaintiff's request or because of Plaintiff's conduct. Plaintiff filed its expert reports on time and the defense has not. The Plaintiff is not requesting any additional time or any further delays in the prosecution of this case, the Defendant is." (Doc. 70, p. 7). Perhaps more incredibly, plaintiff's counsel proceeds to request sanctions against defendant for its alleged failure to timely disclose its experts by the September 1, 2005 disclosure deadline. To be charitable, the Court finds these arguments unavailing and disappointing.[5]

Defendant has spent considerable time and resources defending this case under the fuel tank placement theory. Allowing plaintiff to pursue her new theory, after already receiving two case deadline extensions to pursue the old theory, would cause defendant to start over. Therefore, plaintiff has failed to carry her burden to show her actions were harmless to defendant. The Court further finds that plaintiff failed to proffer a substantial justification for her failure to comply with Rule 26(e). Based on plaintiff's failure to comply with Rule 26(e), pursuant to Rule 37 and this

---

[5] This does not diminish the respect the Court has for plaintiff's counsel and his firm; the Court understands that they inherited this case from predecessor counsel at a relatively late date and are trying to make the best of a bad situation. However, this was not the way to do it.

-15-

Court's inherent power to manage its docket, defendant's motion to strike Gerald Rosenbluth is due to be granted.

Further, assuming *arguendo*, plaintiff's Complaint is not limited to the tank placement theory, and, as plaintiff's counsel suggests, can be read broadly to include other design defect theories, such as the escape hatch theory, summary judgment is nevertheless due to be granted to defendant. Because mechanical engineering and design defect expert Gerald Rosenbluth is stricken, and plaintiff has adduced no other evidence of negligence or a design defect attributable to defendant, defendant is entitled to summary judgment. See Browder v. General Motors Corp., 5 F. Supp. 2d 1267, 1283-84 (M.D. Ala. 1998) (awarding summary judgment to defendant when plaintiff was dilatory in prosecuting the lawsuit and adopted alternative theories throughout, including new theories near the close of discovery, which plaintiff's expert could not support with facts in the record).

### III.   CONCLUSION

The Court does not take lightly how this Order impacts plaintiff. Nevertheless, defendant, no more or less than plaintiff, is entitled to the benefit of the Federal Rules of Civil Procedure. The Court gave plaintiff every opportunity to timely prosecute this case. Unfortunately, plaintiff simply was unable to do so.

Accordingly, it is hereby **ORDERED**:

1.      Defendant's Motion to Strike Expert, or in the Alternative, Motion to Stay Discovery and Award Sanctions (Doc. 61) is **GRANTED**.  The report and testimony of expert Gerald Rosenbluth will be excluded from evidence in this case.

2.      Defendant's Motion For Summary Final Judgment (Doc. 63) is **GRANTED** as to both the "old" fuel tank theory and the "new" escape hatch theory. The Clerk will enter judgment in favor of defendant and against plaintiff on the remaining counts in the Complaint and close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 3rd day of May, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

t.
Copies: counsel of record